# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**EULA K. PIERCE, et al.**                    **CIVIL ACTION**

**VERSUS**                                    **NO. 12-2224**

**EXXON MOBIL CORPORATION, et al.**           **SECTION: "G"(5)**

## ORDER AND REASONS

Before the Court is Defendants Shell Oil Company, Shell Offshore Inc., and SWEPI LP's (collectively, "Shell") Motion to Dismiss Plaintiffs' Medical Monitoring, Strict Liability, Absolute Liability, Breach of Contract, Solidary Liability, and Punitive Damages Claims Pursuant to Rule 12(b)(6).[1] After considering the petition, the pending motion, the memorandum in support, the opposition, the reply, the record, and the applicable law, the Court will grant in part and deny in part the pending motion.

## I. Background

### A. Factual Background

Eula K. Pierce and Brandy D. Pierce (collectively, "Plaintiffs") bring this action for the death of Warren Pierce ("Pierce"), who died on August 6, 2011, as the surviving spouse of Pierce and biological child of Pierce, respectively.[2] Made defendants are various oil companies who used the Pipeline Services, Inc. yard to clean and process their equipment. Specifically, Plaintiffs name, among others, Exxon Mobile Corporation, ExxonMobile Oil Corporation, Humble Oil & Refining, Chevron

---

[1] Rec. Doc. 27.

[2] Rec. Doc. 1-2 at ¶¶ 1-3. (state court petition).

USA, Inc., Marathon Oil Company, Placid Oil Company, Shell Oil Company, Shell Offshore, Inc., SWEPI, L.P., and ConocoPhillips Company (collectively, "Defendants").[3]

In the petition, Plaintiffs explain that Pierce was employed by Amsted Industries Incorporated d/b/a Pipeline Services, Inc. from 1965 through 1988 at its facility in Harvey, Louisiana.[4] Plaintiffs allege that Pierce "was exposed to dangerous levels of radiation ... which ultimately caused the disease pathology, cardio myopathy, which killed him."[5] Plaintiffs allege that Defendants "as part of their oil and gas production operations, had used production equipment, including oil field pipe also called tubulars, casing, and other equipment ... cleaned at locations where the pipe cleaning contractors conducted pipe cleaning operations for" Defendants, but that the equipment contained "hazardous, toxic and carcinogenic radioactive materials."[6] Plaintiffs claim that the pipe Defendants used in their oil and gas production became contaminated, which also caused a restriction in flow. This prompted the pipe to be removed by Defendants who transported the pipe to a "pipe yard" to remove the contamination.[7]

Plaintiffs further allege that at no time was the contaminated pipe marked as radioactive.[8] Through the cleaning process, the contaminants became pulverized and airborne throughout the pipe yard that Pierce worked.[9] Plaintiffs aver that Defendants are liable for failing to warn Pierce of the contamination, even though they had knowledge; that they are strictly liable for all damages because

---

[3] *Id.* at ¶¶ 5-6.

[4] *Id.* at ¶ 9.

[5] *Id.* at ¶ 10.

[6] *Id.* at ¶¶ 11-12.

[7] *Id.* at ¶¶ 15-18.

[8] *Id.* at ¶ 20.

[9] *Id.* at ¶ 23.

they had "*garde* of the contaminated pipe;" and that they are absolutely liable for damages because they engaged in "ultra-hazardous activity."[10]

Plaintiffs pursue a cause of action against Defendants for the wrongful death of Pierce and also seek survival damages. In addition, Plaintiffs, request "pre-death pain and suffering, decedent's loss of income both past and future, medical expenses, the loss of decedent's love, affection, companionship, support and funeral expenses," pursuant to Louisiana Civil Code articles 2315.1 and 2315.2.[11] Finally, Plaintiffs request exemplary damages from Defendants, jointly and severally, because of Defendants' "reckless and wanton disregard for public safety in storage, handling, transportation and/or disposal of hazardous and/or toxic materials which conduct occurred during the period of the effective dates of Civil Code Article 2315.3"[12] While not an issue in the pending motion, Plaintiffs argue that *contra non valentum* applies to this action because Defendants took actions to conceal their liability.[13]

**B. Procedural Background**

Plaintiffs filed this action in the Twenty-Fourth Judicial District Court for the Parish of Jefferson, State of Louisiana, on August 3, 2012.[14] On September 7, 2012, Defendant Chevron U.S.A., Inc. ("Chevron") filed a notice of removal in this Court, with the consent of all other defendants, on the grounds of diversity pursuant to 28 U.S.C. § 1332.[15] On October 5, 2012, Shell filed the pending motion

---

[10] *Id.* at ¶ 25.

[11] *Id.* at ¶ 31.

[12] *Id.* at ¶ 32.

[13] *Id.* at ¶¶ 33-36.

[14] *Id.*

[15] Rec. Doc. 1.

to dismiss.[16] On October 30, 2012, Plaintiffs filed an opposition.[17] On November 7, 2012, Shell, with leave of court, filed a reply.[18]

## II. Parties' Arguments

In support of the pending motion, Shell contends that Plaintiffs' claim for relief for medical monitoring fails as a matter of law, because Warren Pierce is deceased, and the Louisiana Supreme Court has held that a cause of action for medical monitoring is personal and abates upon the death of the decedent.[19] Next, Shell argues that Plaintiffs have failed to state a claim for the imposition of strict liability for their cause of action. Specifically, Shell avers that Plaintiffs have not alleged any facts to support the application of strict liability. Shell explains that before April 16, 1996, when Louisiana Civil Code article 2317 was amended, to succeed on a cause of action under a theory of  strict liability, a plaintiff had to prove (1) he was injured by a thing that was in the defendant's care, custody or control (*garde*); (2) the thing had a vice, ruin, or defect that presented an unreasonable risk of harm; and (3) the vice, ruin, or defect was the cause in-fact of plaintiff's damages.[20] Shell argues that paragraph 19 of the petition states that the unidentified pipe cleaning contractors had custody over the pipe when the contaminants became airborne, and therefore, Plaintiffs have conceded that Defendants, including Shell, did not have custody of the pipe when the alleged injury occurred.[21] Shell also notes that after the enactment of Civil Code article 2317.1 in 1996, the Louisiana Supreme Court acknowledged that the

---

[16] Rec. Doc. 27.

[17] Rec. Doc. 29.

[18] Rec. Doc. 32.

[19] Rec. Doc. 27-1 at p. 5 (citing *Meral v. Aucoin*, 00-1323 (La. 11/13/00); 772 So.2d 107).

[20] *Id.* at pp. 6-7 (citing *Lasyone v. Kan. city S. R.R.*, 00-2628 (La. 4/3/01); 786 So.2d 682, 689).

[21] *Id.* at pp. 7-8.

legislature had eliminated strict *garde* liability, turning it into a negligence claim.[22] Therefore, Shell maintains that Plaintiffs have no claim to apply strict liability for any claims that arose after April 16, 1996.[23]

Next, Shell maintains that Plaintiffs have failed to state a claim for the application of absolute liability in connection with ultra-hazardous activities. Shell notes that as amended in 1996, Louisiana Civil Code article 667 expressly limits absolute liability for ultra-hazardous activities to pile-driving or blasting with explosives, and only when in the context of a proprietor-neighbor relationship. Shell claims that those facts are not alleged here.[24] Moreover, Shell claims that even prior to the 1996 amendment, absolute liability for ultra-hazardous activities was limited to those activities "that [could] not be performed safely even with the greatest care and prudence and which [were] deemed ultra-hazardous as a matter of policy and regardless of whether the utility outweigh[ed] the risk."[25] Shell argues that this "narrow jurisprudential list" was comprised of actions like crop dusting, storage of toxic gas, pile driving, or blasting with explosives, none of which are alleged here. In addition, Shell argues that Plaintiffs' allegations fail to satisfy the three-prong test that was in effect prior to the 1996 amendment to determine if an activity was ultra-hazardous: (1) the activity related to land or some other immovable; (2) the activity itself causes the alleged injury and the defendant is engaged directly in the injury-producing activity; and (3) the activity does not require substandard conduct to cause injury.[26]

---

[22] *Id.* at p. 8 (citing *Burnmaster v. Plaquemines Parish Gov't*, 07-2423 (La. 5/21/08): 982 So.2d 799 n.1.).

[23] *Id.* at p. 9.

[24] *Id.*

[25] *Id.* (citing *Kent v. Gulf States Utils. Co.*, 418 So.2d 493, 498 (La. 1982)).

[26] *Id.* at p. 10 (citing *Kent*, 418 So.2d at 498).

In consideration of these prongs, Shell first notes that the alleged harm was not caused by activity that related to land or some other immovable, but rather the removal of contaminants from a pipe.[27] Regarding the second prong, Shell states that "Defendants other than Shell are alleged to have been engaged directly in the injury producing-activity. More specifically, the Petition alleges that [Defendants'] used production equipment that was cleaned by pipe cleaning contractors and other persons at the Pipeline Systems yard/facility in Harvey, Louisiana."[28] Shell argues that there are no allegations in the petition that it was directly involved in the cleaning process that allegedly led to the claimed exposure.

In consideration of the third prong, Shell points out that there is no allegation in the petition that these activities could not have been performed safely, but rather there are allegations of a failure to properly supervise, failure to warn, failure to advise, failure to test the pipe, failure to dispose of properly, and failure to place marking identification. Shell contends that these conclusions suggest that "these activities can be performed safely, properly, and without damage," and therefore Plaintiffs' allegations are insufficient as a matter of law to claim liability for ultra-hazardous activities.[29]

Shell also claims that Plaintiffs have failed to state a claim for breach of contract, as there are no allegations of a contract between Shell and Plaintiffs or Pierce.[30] Next, Shell challenges Plaintiffs' claim of solidary liability for their wrongful death claims. Shell explains that a wrongful death action does not arise until the death of the decedent, and therefore the applicable law is the law in effect on the

---

[27] *Id.* (citing *Bartlett v. Browning-Ferris Indus. v. Chem. Servs., Inc.*, 96-218 (La. App. 3 Cir. 11/6/96); 683 So.2d 1319 (holding that the operation of a hazardous waste disposal facility did not relate to land under this analysis

[28] *Id.* at p. 11 (citing Rec. Doc. 1-2 at ¶¶ 5, 11, 19).

[29] *Id.*

[30] *Id.* at pp. 11-12.

date of decedent's death.[31] Therefore, Shell argues that at the time of Pierce's death on August 6, 2011, the law only allowed for solidary liability when one conspires with another to commit an intentional act.[32] Shell avers that because Plaintiffs have not alleged an intentional tort, solidary liability should not apply to their wrongful death claims.[33]

Lastly, Shell contends that Plaintiffs have failed to state a claim for punitive damages for their wrongful death action and fail to state a claim for punitive or exemplary damages before the former article 2315.3 was enacted for their survivor action. Shell claims that under Louisiana Supreme Court precedent, a wrongful death action compensates the beneficiaries for their own injuries as a result of the victim's death.[34] Thus, Shell argues that the cause of action arises at the time of the decedent's death and the law at that time is what shall be applied. Therefore, Shell maintains that Plaintiffs are not entitled to punitive or exemplary damages under the former Louisiana Civil Code article 2315.3, because their cause of action arose after Article 2315.3 was repealed. In further support of its position, Shell cites *Bulot v. Intracoastal Tubular Services, Inc.*,[35] from the Louisiana Court of Appeal for the Fourth Circuit, where the court held that wrongful death damages do not include punitive damages, and that only the person actually injured may receive punitive damages. Shell also notes that claims for punitive damages were asserted in a related suit in state court, where Pierce is a plaintiff.

Further, Shell argues that the former Article 2315.3 cannot apply to conduct that occurred outside the period the article was in effect, which was enacted on September 4, 1984, and repealed on

---

[31] *Id.* at pp. 12-13 (citing *Walls v. Am. Optical Corp.*, 98-0455 (La. 9/8/99); 740 So.2d 1262, 1270).

[32] *Id.* at p. 13 (citing La. Civ. Code art. 2324(A)).

[33] *Id.* (citing *Landry v. Avondale Indus., Inc.*, 03-3432 (La. 7/2/04); 877 So.2d 970, 972).

[34] *Id.* (citing *Deshotel v. Guichard Operating Co.*, 03-3511 (La. 12/17/04); 916 So.2d 72, 84).

[35] 04-1376 (La. App. 4 Cir. 11/3/04); 888 So.2d 1017, 1022-23.

April 16, 1996, in connection to Plaintiffs survivor action.[36] Shell explains that Plaintiffs allege Pierce was exposed to contaminants from 1965 through 1988, and therefore the Court should rule that Plaintiffs are not entitled to any punitive damages as a result of exposure before the article's enactment or after its repeal for their survivor action.[37]

In opposition, Plaintiffs state that they "do not oppose dismissal of the medical monitoring claim."[38] However, Plaintiffs do oppose the dismissal of their claims for strict liability. Plaintiffs claim that at the time of Pierce's exposure, all of which occurred before 1996, Articles 2317 and 667 were in effect, and therefore, these articles are applicable to impose strict and absolute liability on Shell and the other defendants.[39]

Concerning strict or *garde* liability, Plaintiffs challenge Shell's assertion that they have failed to state a claim, because they assert that there remain questions of fact as to who had custody and control of the pipe when it caused the alleged damage to Pierce.[40] Therefore, Plaintiffs claim this issue cannot be resolved at this time. Plaintiffs argue that the same holds true regarding their demand for absolute liability for ultra-hazardous activities. Plaintiffs argue that much of the alleged ultra-hazardous activity occurred before 1996, when Article 667 was amended to limit the imposition of absolute liability. Therefore, Plaintiffs contend that this issue should be submitted to a jury to determine if Plaintiffs have proved that tortious activity occurred prior to 1996.

---

[36] *Id.* at pp. 14-15 (citing *Anderson v. Avondale Indus., Inc.*, 00-2799 (La. 10/16/01); 798 So.2d 93, 97-101).

[37] *Id.* at p. 15.

[38] Rec. Doc. 29 at p. 1.

[39] *Id.* at p. 2.

[40] *Id.* at p. 3.

Plaintiffs further address Shell's claims that they have not plead sufficiently that Shell had custody of the used equipment when it caused the alleged injury, because the petition states that Shell and the other oil company defendants tendered custody to the pipe-cleaning defendants: "Even if defendants' assertions were true, such an application of the law allowing a tortfeasor to shield themselves from liability simply by passing physical custody to a third party would be a blatant miscarriage of justice."[41] Without claiming that Shell had custody of the equipment, Plaintiffs instead argue that at all relevant times the oil company defendants', including Shell's, "direct employees were present at the pipe yards observing the cleaning and inspection of the used production equipment, and at all relevant times the Oil Company Defendants had actual knowledge of the presence of radiation... This is a question of fact, not a question of law."[42]

Plaintiffs also contest Shell's claims that the petition fails to state a claim for absolute liability in connection with ultra-hazardous activity on the grounds that the allegations themselves defeat the three-prong test required to impose such liability. In response, Plaintiffs state, "Plaintff[s] ha[ve] alleged radioactive exposure through negligence and concealment of the hazard by the defendants. Without going beyond the pleadings to determine how and to what degree the risk of harm could be eliminated, the [motion to dismiss] cannot be supported and should be dismissed."[43] Concerning breach of contract, Plaintiffs "submit that defendants' motion should be dismissed as moot because plaintiffs have brought no action for breach of contract."[44]

---

[41] *Id.* at p. 4.

[42] *Id.*

[43] *Id.* at p. 5 (internal citation omitted).

[44] *Id.*

Next, Plaintiffs addresses the application of solidary liability to their wrongful death action. Plaintiffs do not disagree with Shell's analysis that solidary liability requires an intentional act, but point out that in the petition there is an allegation that the oil company defendants participated in a concerted effort to submit false data regarding radioactivity levels of the pipe scale to federal and state environmental bodies.[45] Therefore, Plaintiffs argue that this allegation is sufficient to defeat the pending motion on this issue.

Plaintiffs also oppose the dismissal of their demand for punitive damages on their wrongful death claim. Plaintiffs claim that "[b]ecause La. Civ. Code 2315.3 was in effect at the time of the decedent's exposure, which ultimately caused his death, it applies to plaintiff's wrongful death claims."[46] Plaintiffs direct this Court to an opinion by Judge Englehardt, where he denied the defendants' motion to dismiss a punitive damages claim on a wrongful death action in a similar case.[47] Plaintiffs reject Shell's reliance on *Bulot*, claiming that the decision was misguided and that the Louisiana Supreme Court has yet to declare, as the *Bulot* court did, that punitive damages are not available in wrongful death actions.[48] Instead, Plaintiffs argue that the Louisiana Supreme Court has "tacitly approved the invocation of punitive damages for wrongful death actions" in *Anderson v. Avondale Industries.*[49] In *Anderson,* the plaintiffs sought punitive damages under Article 2315.3 in a wrongful death action. The Louisiana Supreme Court held that the plaintiffs could not avail themselves of this article because the alleged exposure that caused the death occurred in 1980, before the enactment

---

[45] *Id.*

[46] *Id.* at p. 6.

[47] *Id.* n. 2 (citing *Aucoin v. Exxon Mobil Corp.*, Civ. No. 09-3690, Rec Doc. 141).

[48] *Id.* at pp. 6-8.

[49] 798 So.2d 93.

of the article. Here, Plaintiffs argue that "[n]owhere did the [Louisiana] [S]upreme [C]ourt hold that wrongful death cases are *de jure* not entitled to invoke the punitive damages remedy of Art. 2315.3," and that if that were true, the decision would be superfluous.[50] Plaintiffs use the remainder of the opposition attacking the reasoning of the *Bulot* court.[51]

In reply, Shell first addresses the strict liability claims. Shell contends that regardless of whether the pre or post 1996 law is applied, Plaintiffs do not have a cause of action. Shell argues that Plaintiffs only addressed the custody element on their claim, but that they would also have to demonstrate a vice or defect that presented an unreasonable risk of harm, and that the vice or defect was the cause in fact.[52] However, citing allegations in the petition, Shell notes that other entities had custody of the pipe when the alleged exposure occurred, and that the process of cleaning the pipes, not done by Shell, was the action that released the contaminants, therefore defeating the first two elements.[53]

Shell next readdresses Plaintiffs' claims for absolute liability for ultra-hazardous activities, and reiterates that even before the more stringent restrictions were placed on Article 667, which limited absolute liability to pile driving and blasting, the article still limited the designation of ultra-hazardous activities to those that could not be performed safely even with the greatest care and prudence.[54] Moreover, whether an activity was considered ultra-hazardous is a question of law, not fact.[55] Therefore, Shell claims that because Plaintiffs have not pled the existence of any recognized ultra-hazardous

---

[50] *Id.* at p. 9.

[51] *Id.* at pp. 9-16.

[52] Rec. Doc. 32 at pp. 2-3.

[53] *Id.* at pp. 3-4.

[54] *Id.* at p. 5 (citing *Kent*, 418 So.2d at 498).

[55] *Ainsworth v. Shell Offshore, Inc.*, 829 F.2d 548, 550 (5th Cir. 1987).

activity, Plaintiffs' claims for absolute liability should be dismissed.[56]

In consideration of solidary liability for Plaintiffs' wrongful death action, Shell reiterates that despite Plaintiffs' contentions, the law to be applied is not what was effective at the time of the alleged exposure, but rather what law was in effect at the time of Pierce's death.[57] Shell also argues that Plaintiffs' response that it has alleged a concerted effort by the oil companies to conceal certain activities fails to state a claim for solidary liability because there is no cause of action for an intentional tort in the petition.[58]

Lastly, Shell returns to Plaintiffs' demand for punitive damages on their wrongful death and survival claims. Shell notes that "Plaintiffs do not oppose the dismissal of their punitive damages claims prior to the enactment of former Civil Code Article 2315.3, and therefore this Court should rule that they are not entitled to punitive damages before the enactment of after its repeal."[59] Next, Shell argues that Plaintiffs' assertion that the law at the time of exposure should be applied to the wrongful death action has no supporting authority, and is contrary to Louisiana Supreme Court precedent that a wrongful death action arises at the date of the decedent's death and the law in effect on the date of death applies.[60] Shell emphasizes that Pierce died long after the former article 2315.3 was repealed in 1996.

Shell also challenges Plaintiffs' attempt to distinguish or discredit the reasoning in *Bulot*. Shell notes that the Louisiana Court of Appeal for the Fourth Circuit recently ruled again that punitive damages are not available in wrongful death actions, and the Louisiana Supreme Court declined to grant

---

[56]  Rec. Doc. 32 at p. 6.

[57]  *Id.* (citing *Landry*, 877 So.2d at 972).

[58]  *Id.* at p. 7.

[59]  *Id.*

[60]  *Id.* at p. 8 (citing *Walls*, 740 So.2d at 1269-70).

a writ to hear this case.[61]

### III. Standard on a Motion to Dismiss

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "the central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief."[62] "A motion to dismiss on the basis of the pleadings alone should rarely be granted."[63] Although a court must accept the factual allegations in the pleadings as true, the plaintiff must plead enough facts to state a claim to relief that is plausible on its face.[64] "Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."[65] Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true.[66]

### IV. Law and Analysis

#### A. Claim for Medical Monitoring

Shell requests dismissal of Plaintiffs' cause of action for medical monitoring. Plaintiffs do not oppose the dismissal,[67] and therefore the Court will grant the pending motion on this issue.

---

[61] *Id.* (citing *Bailey v. Exxon Mobil Corp.*, 11-0177 (La. App. 4 Cir. 8/31/11); 76 So.3d 53, 55, *writ denied*, 11-2131 (La. 11/18/11); 75 So.3d 468).

[62] *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008).

[63] *Madison* v. *Purdy*, 410 F.2d 99, 100 (5th Cir. 1969).

[64] *Doe*, 528 F.3d at 418 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).

[65] *Drs. Bethea, Moustoukas & Weaver, LLC v. St. Paul Guardian Ins. Co.*, 376 F.3d 399, 403 n. 7 (5th Cir. 2004).

[66] *Twombly*, 550 U.S. at 555-56.

[67] Rec. Doc. 29 at p. 1.

**B. Demand for Imposition of Strict Liability**

Pursuant to the former Louisiana Civil Code Article 2317, to impose strict liability on a defendant for causes of action that arose before April 16, 1996, a plaintiff must establish that (1) the person was injured by a thing that was in the defendant's care, custody or control (*garde*); (2) the thing had a vice, ruin, or defect that presented an unreasonable risk of harm; and (3) the vice, ruin, or defect was the cause in-fact of plaintiff's damages.[68] Failure to prove any of these elements is fatal to the claim.[69] "The major difference between a strict liability case and a negligence case is that a claimant in a strict liability case is relieved of proving that the owner knew or should have known of the risk involved."[70] The dispute here is whether Plaintiffs have sufficiently alleged that Shell had custody of the allegedly contaminated equipment that caused Pierce's injuries. "Custody, distinct from ownership, refers to a person's supervision and control (garde) over a thing posing an unreasonable risk of harm."[71] "'Custody,' for purposes of strict liability, does not depend upon ownership, but involves the right of supervision, direction, and control as well as the right to benefit from the thing controlled."[72]

Shell argues that Plaintiffs cannot pursue a claim in strict liability, because in the petition Plaintiffs allege that the contaminated equipment was released to other defendants when Pierce was allegedly injured by the contaminants; therefore, Shell argues that the petition itself acknowledges that it was divested of "custody" of the equipment at the relevant times. While this allegation is in the petition, Plaintiffs also allege in the petition that "[a]t all relevant times, the Oil Company Defendants'

---

[68] *Lasyone*, 786 So.2d at 689.

[69] *Id.* at 689-90

[70] *Bealer v. Nat'l Tea Co.*, 597 So. 2d 1242, 1245 (La. App. 3 Cir. 1992) (citing *Kent*, 418 Do. 2d at 793).

[71] *Baudoin v. McDermott, Inc.*, 93-2084 (La. App. 1 Cir. 10/7/94); 644 So.2d 799, 801.

[72] *Haydel v. Hercules Transp., Inc.*, 94-0016 (La. App. 1 Cir. 4/7/95); 694 So.2d 408, 414.

[including Shell's] direct employees were present at the pipe yards observing the cleaning and inspection of the used production equipment."[73] As noted above, "custody" includes the right of supervision, control, and to benefit from a thing. Reading the allegations in the light most favorable to Plaintiffs, which this Court must do on a motion to dismiss, Plaintiffs' allegations make a plausible claim that Shell had supervisory control of the pipe and therefore had "custody" as defined under the former Article 2317. Moreover, it is not disputed that Shell still owned the pipe, and therefore could derive benefits from its use. As such, Plaintiffs have included sufficient allegations to defeat the pending motion regarding the application of strict liability. Therefore, the Court will deny the motion as it addresses this issue.[74]

### C. Absolute Liability for Ultra-Hazardous Activities

Shell moves to dismiss Plaintiffs' claims for absolute liability for ultra-hazardous activities. Absolute liability imposes liability on a defendant without proof of negligence or other fault and is imposed "as a matter of policy when harm results from the risks inherent in the nature of the activity."[75] At the time of the alleged exposure, before Article 667 was amended and narrowed, the Louisiana Supreme Court imposed a three-prong test to determine if an activity was ultra-hazardous and therefore warranted absolute liability: (1) the activity related to land or some other immovable; (2) the activity itself causes the alleged injury and the defendant is engaged directly in the injury-producing activity;

---

[73] Rec. Doc. 1-2 at ¶ 21.

[74] The Court also notes that the Louisiana Supreme Court has clearly held that plaintiffs may not pursue claims arising after 1996 for strict liability because Article 2317.1 repealed the availability of a claim in strict liability. *Burnmaster*, 982 So. 2d at 799 n.1. However, as Pierce's alleged exposure occurred from 1965 to 1988, this is likely not an issue here.

[75] *Haydel*, So. 2d at 413.

and (3) the activity does not require substandard conduct to cause injury.[76] All three prongs must be satisfied. Although Plaintiffs claim that "[w]ithout going beyond the pleadings to determine how and to what degree the risk of harm could be eliminated, the [motion to dismiss] cannot be supported and should be dismissed,"[77] prior to the amendment of Article 667 that limited absolute liability to pile driving and blasting, "[w]hether an activity qualifie[d] as ultrahazardous in Louisiana [was] a question of law.[78]

In this matter, Plaintiffs allegations fail to meet at least two of the three prongs. First, the activity does not relate to land or some other immovable. Louisiana courts have previously held that operation of a hazardous waste disposal is not an ultra-hazardous activity, and did not relate to land, because the pertinent activity was storing the additives above ground.[79] Here, the activity was cleaning pipes, which similarly does not relate to the land. Second, the defendant must be "directly engaged in the activity." While Plaintiffs have not alleged that Shell directly pulverized the contaminants and made them airborne, they have alleged that Shell and its employees were there and supervised. Therefore, in the light most favorable to the Plaintiffs, this prong is satisfied. However, the third prong requires that the activity is dangerous in the absence of substandard conduct. In the petition and in opposition, Plaintiffs have alleged "radioactive exposure through negligence and concealment of the hazard by the defendants," including a failure to warn.[80] The allegations in the petition do not allege that the activity is ultra-hazardous in and of itself, but rather that the substandard care of Defendants caused this damage.

---

[76] *Kent*, 418 So. 2d at 498.

[77] Rec. Doc. 29 at p. 5.

[78] *Ainsworth*, 829 F.2d at 550.

[79] *Bartlett*, 683 So.2d at 1322.

[80] Rec. Doc. 29 at p. 5; Rec. Doc. 1-2 at ¶ 25.

Therefore, Plaintiffs own allegations on this issue in the petition defeat their claim. As such, the Court will grant the pending motion on this issue.

### D. Breach of Contract

While Shell moves for the dismissal of a breach of contract claim, Plaintiffs have stated that they seek no cause of action for breach of contract, and no such allegation appears in the petition.[81] Therefore, Shell's request to dismiss a breach of contract claim will be denied as moot.

### E. Solidary Liability for Wrongful Death Action

Plaintiffs have alleged that the defendants are solidarily liable in their wrongful death action. On this claim the parties dispute the applicable law as well as if the allegations in the petition state a claim. Regarding the first question, Shell contends that the law at the time of Pierce's death must be applied to the wrongful death action, while Plaintiffs claim that because of the allegations of a conspiracy, "the net effect of this concealment was to cause radioactive exposure," the law at the time of exposure should be applied to Plaintiffs' wrongful death action.[82] However, Plaintiffs have not supported this position with any case law. Instead, Louisiana Supreme Court jurisprudence is clear that a cause of action for wrongful death arises at the death of the decedent and the law in effect at the time of death shall be applied.[83] Therefore, the law to be applied to this action is the law that was in effect on August 6, 2011, when Pierce died. Pursuant to Louisiana Civil Code article 2324:

---

[81]  *See* Rec. Doc. 29 at p. 5.

[82]  *Id.* at pp. 5-6.

[83]  *Walls*, 740 So.2d at 1270 ("Because the wrongful death action arises at the death of the victim, and compensates the beneficiaries for their injuries that occur at the moment of the victim's death and thereafter, the plaintiffs' injury in the instant case occurred upon the death of Mr. Walls, and not before. Since the plaintiffs could not have been injured until Mr. Walls' death, and their cause of action for wrongful death did not arise prior to that date, it necessarily follows that the plaintiffs could not have acquired a "right" in their cause of action for wrongful death prior to March 17, 1995. Therefore, we find that no right acquired in a cause of action for the wrongful death of Mr. Walls prior to the October 1, 1976 effective date of La. R.S. 23:1032, as amended.").

A. He who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act.

B. If liability is not solidary pursuant to Paragraph A, then liability for damages caused by two or more persons shall be a joint and divisible obligation. A joint tortfeasor shall not be liable for more than his degree of fault and shall not be solidarily liable with any other person for damages attributable to the fault of such other person, including the person suffering injury, death, or loss, regardless of such other person's insolvency, ability to pay, degree of fault, immunity by statute or otherwise, including but not limited to immunity as provided in R.S. 23:1032, or that the other person's identity is not known or reasonably ascertainable.

Shell has argued for the dismissal of this claim for solidary liability, asserting that there is no allegation of a conspiracy. However, in opposition to the pending motion, Plaintiffs have alleged a conspiracy on the part of the oil company defendants to hide or conceal their actions by submitting false data to federal and state environmental bodies.[84] Shell argues that this is insufficient because there is no allegation or a cause of action for an intentional tort in the petition. However, for the purposes of a motion to dismiss, this Court must accept all factual allegations of Plaintiffs as true, and read the petition in the light most favorable to Plaintiffs. Therefore, Plaintiffs have stated facts sufficient to allege a conspiracy and implicate solidary liability under Louisiana Civil Code article 2324. Therefore, the Court will deny the motion as it relates to this issue.

### F. Claim for Punitive Damages for Wrongful Death and Survivor Actions

1. Wrongful Death

The parties dispute the availability of punitive damages for Plaintiffs' wrongful death action. Plaintiffs argue that because much of the exposure occurred after the 1984 enactment of Article 2315.3, which allowed for punitive damages, they are allowed to recover punitive damages for this period. However, this article was repealed on April 16, 1996, and punitive damages are no longer available. As

---

[84] Rec. Doc. 29 at p. 5.

previously established, a wrongful death plaintiff does not have a cause of action until the decedent's death, and the law to be applied to a wrongful death action is the law in effect at the time of the decedent's death.[85] At the time of Pierce's death, Article 2315.3 had been repealed. Moreover, the Louisiana Supreme Court has held that a wrongful death action "compensate[s] the beneficiaries for their ***own injuries suffered*** as a result of the victim's death."[86]

Additionally, even if the former Article 2315.3 was in effect based on Pierce's time of exposure, Shell cites case law that as a matter of law, punitive damages are not available for wrongful death actions. In response, Plaintiffs can only cite to decisions they claim "tacitly" hold that this remedy is available in wrongful death actions and to another section of this Court that declined to follow *Bulot*.[87] Neither party disputes that in *Bulot*, the Louisiana Fourth Circuit Court of Appeal expressly stated that punitive damages were not available in a wrongful death action, as only the person who actually suffered the physical harm may be entitled to such damages. Instead, Plaintiffs reject the *Bulot* court's decision as poorly reasoned.

The authority Plaintiffs claim "tacitly" holds that punitive damages are available in wrongful death actions is *Anderson v. Avondale Industries*.[88] In *Anderson*, the decedent died in 1994, and the plaintiffs sought punitive damages arising from the decedent's death and exposure to toxic agents that ended in 1980. The Louisiana Supreme Court held that punitive damages were not available because the exposure ended in 1980, before the enactment of Article 2315.3. The Louisiana Supreme Court

---

[85] *Walls*, 740 So.2d at 1270.

[86] *Deshotel v. Guichard Operating Co.*, 03-3511 (La. 12/7/04); 916 So.2d 72, 84 (emphasis added).

[87] This Court would note that Judge Engelhardt did not write a full order and reasons, but merely denied the motion "for essentially the same reasons set forth in Plaintiffs' opposition memoranda." Rec. Doc. 29-1.

[88] 798 So.2d 93.

reasoned that applying Article 2315.3 to conduct that occurred before the enactment of Article 2315.3 in 1984 would be an impermissible retroactive application of the law.[89]

While *Anderson* did not expressly address whether punitive damages are available in wrongful death actions, it is important to note that at the time of the decedent's death, when the wrongful action accrued, Article 2315.3 was still in effect. In contrast, here, Pierce died after the article had been repealed. Therefore, even though in this case much of the alleged activity occurred within the active period of Article 2315.3, Pierce died after the article's repeal, and therefore for the purposes of the wrongful death action, this article is not applicable. As such, Plaintiffs' may not seek punitive damages for their wrongful death action, even if Pierce's alleged exposure occurred within Article 2315.3's active period.

Plaintiffs are correct that *Anderson* casts some doubt on whether the Louisiana Supreme Court would agree with the *Bulot* court that punitive damages are not available as a matter of law for wrongful death actions. Sitting in diversity, this Court is not bound by *Bulot*, but only by decisions from the Louisiana Supreme Court.[90] Both parties acknowledge that the Louisiana Supreme Court has yet to squarely address and rule on this issue. However, this Court would note that the Louisiana Supreme Court has declined to grant writs on intermediate appellate court decisions ruling that punitive damages are not available in wrongful death actions on at least two occasions. Louisiana's highest court declined an invitation to review the decision in *Bulot*,[91] and later denied a writ in *Bailey v. Exxon Mobil Corp.*,[92] which relied on *Bulot* and held that punitive damages were not available in wrongful death actions.

_____

[89] *Id.* at 101-02.

[90] *In re Katrina Canal Breaches Litig.*, 495 F.2d 191, 206 (5th Cir. 2007).

[91] 05-0094 (La. 3/18/05); 896 So.2d 1011.

[92] 11-0177 (La. App. 4 Cir. 8/31/11); 76 so.3d 53, 55, *writ denied*, 11-2131 (La. 11/18/11); 75 So.3d 468.

Regardless of the soundness of the reasoning in *Bulot*, in *In re Whitaker Construction Co.*,[93] the United States Fifth Circuit Court of Appeals acknowledged:

> It is axiomatic that as an *Erie* court we attempt to discern how Louisiana's highest court would resolve the issue at hand. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) (emphasizing that federal courts cannot make common law on matters reserved to the states). That doctrine is no less applicable where, as here, we are addressing an unsettled area of Louisiana law. It is incumbent upon us to avoid creating new rights and remedies in Louisiana state law where we lack express statutory authority or clear directive from the Louisiana Supreme Court.[94]

Here, without guidance from the Louisiana Supreme Court, to allow for punitive damages in a wrongful death action would create new rights and remedies for plaintiffs without express statutory authority or a clear directive from Louisiana's highest court. This Court declines to take such action. Therefore, this Court finds that Plaintiffs may not recover punitive damages for their wrongful death action. Furthermore, as noted by Shell, Plaintiffs have asserted punitive damages in Pierce's state court suit.

In summary, Plaintiffs' demand for punitive damages in connection to their wrongful death action is foreclosed for two separate and independently sufficient reasons. First, the availability of punitive damages for wrongful death actions in general is in doubt. Without clear statutory authority or a directive from the Louisiana Supreme Court, this Court is instructed to refrain from creating new rights. Second, even if punitive damages were not *per se* barred in wrongful death actions, Plaintiffs have premised their entitlement to these damages on the former Article 2315.3. Louisiana precedent is clear that the law to be applied in wrongful death actions is that which was in effect at the time of the

---

[93] 411 F.3d 197 (5th Cir. 2005).

[94] *Id.* at 209 n. 4.

decedent's death.[95] Here, Pierce died after the repeal of Article 2315.3, and therefore Plaintiffs may not recover punitive damages on this action, pursuant to the former Article 2315.3.

2. Survivor Action

Plaintiffs also seek punitive damages in their survivor action under the former Article 2315.3. The Louisiana Supreme Court has held that the former Article 2315.3 cannot apply to conduct that occurred outside the period the article was in effect, from September 4, 1984 until April 16, 1996.[96] As such, Shell has argued that this Court should expressly state that Plaintiffs have no cause of action for punitive damages in relation to their survivor action for conduct that occurred before the enactment of this article, or after its repeal. Plaintiffs have not disputed this assertion, and in fact only request punitive damages on this claim during the effective period of the former Article 2315.3.[97] Therefore, the Court will grant Shell's request and declare that Plaintiffs may only recover punitive damages on their survivor action during the effective period of former Article 2315.3.

## V. Conclusion

For the reasons stated above, Plaintiffs have failed to state a claim for medical monitoring, the imposition of absolute liability for ultra-hazardous activities, and the availability of  punitive damages for their wrongful death action, or for punitive damages outside of the effective period of the former Article 2315.3 in connection to their survivor action. Therefore, the Court will dismiss these claims with prejudice. Plaintiffs have not brought an action for breach of contract, and therefore the Court will deny Shell's request to dismiss this claim at moot. However, Plaintiffs have stated a claim upon which relief

---

[95] *Walls*, 740 So.2d at 1270.

[96] *Anderson*, 798 So.2d at 97-101.

[97] Rec. Doc. 1-2 at ¶ 32.

may be granted for the imposition of strict liability and solidary liability, and, therefore, the Court will deny the pending motion in these respects. Accordingly,

**IT IS HEREBY ORDERED** that Shell's Motion to Dismiss Plaintiffs' Medical Monitoring, Strict Liability, Absolute Liability, Breach of Contract, Solidary Liability, and Punitive Damages Claims Pursuant to Rule 12(b)(6)[98] is **GRANTED IN PART** and **DENIED IN PART**;

**IT IS FURTHER ORDERED** that Plaintiffs' claims for medical monitoring, absolute liability for ultra-hazardous activities, and punitive damages in connection to their wrongful death action are **DISMISSED WITH PREJUDICE**;

**IT IS FURTHER ORDERED** that Shell's request to dismiss a breach of contract claim is **DENIED AS MOOT**, as Plaintiffs have not asserted this cause of action;

**IT IS FURTHER ORDERED** that Plaintiffs have no cause of action for punitive damages in connection with their survivor action for any activity that occurred outside the effective period of former Article 2315.3; or, to put it another way, Plaintiffs may only recover punitive damages on their survivor action for activity that occurred during the effective period of former Article 2315.3.

**NEW ORLEANS, LOUISIANA**, this 30th day of April, 2013.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[98] Rec. Doc. 27.

23